# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| NORFOLK, ss. | DEDHAM SUPERIOR COURT<br>CIVIL ACTION NO. 2282CV00327 |

|  |  |
|---|---|
| SAMANTHA FAGAN and<br>SABRINA M. FAGAN,<br><br>    Plaintiffs<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and<br>AND JESSICA L. CHIPMAN,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

## PARTIES

1. Plaintiff Samantha Fagan ("Samantha Fagan") is a natural person with a residential address in North Scituate, Rhode Island.

2. Plaintiff Sabrina M. Fagan ("Sabrina Fagan") is a natural person with a residential address in North Scituate, Rhode Island.

3. Defendant Uber Technologies, Inc. ("Uber") is a for-profit corporation incorporated under the laws of the State of Delaware with a principal place of business is 1455 Market Street, San Francisco, California. Uber does business throughout the United States, including in Massachusetts. Uber is registered to do business in Massachusetts as a foreign corporation and maintains a registered agent for service of process with the CT Corporation System, 155 Federal Street, Suite 700, in Boston, Massachusetts.

4. This Court has jurisdiction over Uber under Mass. Gen. L. c. 223A §3 because plaintiffs' causes of action arise in part from Uber's: (a) transacting business in the Commonwealth of Massachusetts; (b) contracting to supply services or things in the

Commonwealth of Massachusetts; and (c) causing tortious injury by an act or omission in the Commonwealth of Massachusetts.

5. Defendant Jessica L. Chipman ("Chipman") with a residential address in Old Colony Road, Norton, Massachusetts.

## FACTS

6. On or about June 21, 2019 at approximately 11:30 p.m., Chipman was driving her motor vehicle, a Honda Odyssey, on a public way in Foxborough, Massachusetts, when she struck and hit Sabrina Fagan and Samantha Fagan, who were walking across the street.

7. Chipman had a duty to avoid hitting Samantha Fagan and Sabrina Fagan.

8. Chipman breached that duty by hitting Samantha Fagan and Sabrina Fagan.

9. Chipman failed to use reasonable care in the operation of her vehicle which was the cause of her car hitting Samantha Fagan and Sabrina Fagan.

10. Chipman drove in an unsafe manner in light of the conditions and circumstances then present, and by driving too fast and failing to stop in time, before hitting Samantha Fagan and Sabrina Fagan.

11. As a result of the impact, Samantha Fagan and Sabrina Fagan suffered substantial injuries including physical and emotional injuries, pain and suffering, lost work, property damage, permanent scarring, and other injuries.

12. Samantha Fagan was transported by a Foxborough Fire Department ambulance to Rhode Island Hospital for treatment.

13. Samantha Fagan was diagnosed with a closed compression fracture of her first lumbar vertebra. She suffered substantial lacerations and bruising. She suffered substantial chest pain, back pain, and a laceration to the back of her head. She was diagnosed with head trauma, a concussion, a spine injury, a knee effusion, and an elevated white blood count. The laceration on

her back was the approximate size and shape of a dinner plate. She was seen by a neurosurgeon for a lumbar fracture and was given a neck brace. She had substantial difficulty standing for long periods because of the pain. She lost some of her memory after the incident.

14. Samantha Fagan also suffered fixation nystagmus in both eyes. She also suffered decreased lumbar range of motion and lumbar paraspinals.

15. Samantha Fagan suffered severe pain and suffering and permanent scarring, and loss of work opportunities.

16. Sabrina Fagan was transported by Lifeline Ambulance to Rhode Island Hospital for treatment.

17. Sabrina Fagan suffered multiple injuries including lacerations and cuts on her leg, ankles and feet. Asphalt and other foreign material was lodged in her lower legs and elbow. She suffered a scalp hematoma and a contusion at the right lung apex.

18. Sabrina Fagan had glass removed from her elbow, which had lodged in her elbow due to the impact from Chipman's vehicle.

19. Sabrina Fagan was diagnosed with acute pain on both knees, contusions, and cervical sprain. She was referred to imaging for deep vein thrombosis. She was diagnosed with hamstring strain and multiple lower extremity contusions.

20. Sabrina Fagan suffered decreased knee range of motion, decreased hip strength, reduced left extremity musculature and substantial pain. Three months later, she had more glass removed from her elbow which had lodged upon impact.

21. Sabrina Fagan received over $20,000 worth of medical treatment. She suffered severe pain and suffering and permanent scarring, and loss of work opportunities.

22. Uber is a popular and rapidly expanding transportation network company whose digital smartphone application (the "App"), also called "Uber," allows individuals to order and pay for transportation through their phones.

23. Individuals who have downloaded the App make a request through the App and Uber matches the rider with an Uber driver who, also signed into the Uber App, picks up the rider and drives them to their chosen destination.

24. At the time of the accident, Chipman was serving and working as an Uber driver and was, upon information and belief, in the process of picking up an Uber passenger.

25. Upon information and belief, Uber drivers, including Chipman, are employees of Uber and/or work as agents under Uber's direction, supervision and control. Without limitation, and upon information and belief:

    a. Uber instructs its drivers who their passengers will be.

    b. Drivers do not have a choice as to which passengers are assigned to them.

    c. Uber instructs its drivers where to go to pick up passengers.

    d. The drivers have no choice as to where to drive the Uber passengers.

    e. Uber retains the right to terminate the drivers at will.

    f. Uber chooses what information to provide to its drivers and when to provide it.

    g. Uber typically does not disclose the rider's destination until the ride begins.

    h. Uber establishes the rate for a given ride without the driver's input.

    i. Uber collects the fare, pays the driver a share of the fare collected, and retains the remainder.

    j. Drivers may not negotiate fares with Uber's riders.

    k. Uber drivers are generally unaware of the total amount Uber collects for a particular ride.

       l. Drivers are required to follow multiple detailed requirements imposed on them by Uber and they are graded, and are subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.).

       m. Uber requires drivers to accept all ride requests when logged into the App or face potential discipline.

       n. Uber prohibits drivers from refusing to provide services based on the rider's destination.

26.     To provide rides quickly and efficiently, Uber's business model depends upon having a large pool of drivers. To accomplish this, Uber solicits and retains tens of thousands of non-professional drivers, such as Chipman.

27.     To become a driver for Uber, individuals, including Chipman, apply through Uber's website. The application process is conducted online and involves filling out a few short forms and uploading photos of a driver's license, vehicle registration, and proof of insurance. This streamlined, fast process is designed to allow Uber to hire as many drivers as possible while incurring minimal associated costs.

28.     Accordingly, at the time of the incident, Chipman was acting on her own behalf and under the direction and control of Uber within the course and scope of her employment and agency.

29.     Upon information and belief, Uber has not sufficiently implemented safety policies and/or protocols, trained its drivers on those policies and protocols, and/or enforced

compliance with same. Upon information and belief, Uber does not require drivers to pass sufficiently rigorous training classes or safe driver courses.

30. Such cost saving is at the expense of member of the public, such as Sabrina Fagan and Samantha Fagan, who are injured by under-supervised drivers, such as Chipman.

## COUNT I
## NEGLIGENCE – AGAINST CHIPMAN

31. Plaintiffs hereby restate and reallege all of the forgoing paragraphs and incorporate them by reference as if fully set forth herein.

32. As set forth above, Chipman owed a duty of care to Samantha Fagan and Sabrina Fagan.

33. Chipman breached that duty by driving in an unsafe manner in light of the conditions and circumstances then present, and by failing to stop in time before hitting Samantha Fagan and Sabrina Fagan with her vehicle.

34. Samantha Fagan and Sabrina Fagan were substantially injured as a direct and proximate result of Chipman's negligent operation of her motor vehicle, and the harm suffered was proximately caused by said breach.  Samantha Fagan and Sabrina Fagan suffered medical expenses, physical pain and suffering, emotional pain and suffering, loss of work, property damage, permanent scarring, and other harms.

35. Samantha Fagan and Sabrina Fagan hereby demand compensation therefor.

## COUNT II
## NEGLIGENCE – AGAINST UBER

36. Plaintiffs hereby restate and reallege all of the forgoing paragraphs and incorporate them by reference as if fully set forth herein.

37. Uber owed plaintiffs and the general public the duty of care to provide safe means and methods of transportation and to reasonably oversee its drivers, including Chipman. Uber

breached the duty of care it owed to Sabrina Fagan and Samantha Fagan by failing to implement sufficiently rigorous safety policies and protocols, by failing to sufficiently train its drivers including Chipman on those policies and protocols, and by failing to enforce compliance with same.

38.     As a direct and proximate result of this negligence of Uber, Samantha Fagan and Sabrina Fagan suffered severe physical, mental and emotional injuries, substantial pain and suffering, loss of enjoyment of life, lost wages, permanent scarring and other damages.

39.     In Massachusetts, an employer may be held liable for torts committed by its employee if the misconduct occurred within the course and scope of the employment, under the doctrine of *respondeat superior*. Doe v. Medeiros, 266 F. Supp. 3d 479, 484 (D. Mass. 2017). Conduct occurs within the course and scope of employment if: (1) it is of the kind for which [the employee] is hired to perform; (2) it occurs within the authorized time and space limits and (3) it was motivated, at least in part, by a purpose to serve the employer. Id. at 490. The test is, in effect, whether the alleged conduct is the "kind of thing that in a general way employees of this kind do in employment of this kind." Kansallis Finance Ltd. v. Fern, 659 N.E.2d 731, 735 (Mass. 1996). Here, Uber provides rides to passengers. Chipman was one of Uber's drivers. Accordingly, Uber is liable for the negligence of Chipman under the doctrine of *respondeat superior*.

40.     Samantha Fagan and Sabrina Fagan hereby demand compensation therefor.

## COUNT III
## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND MANAGEMENT – AGAINST UBER

41.     Plaintiffs hereby restate and reallege all of the forgoing paragraphs and incorporate them by reference as if fully set forth herein.

42. At the time of the incident, Chipman was acting on her own behalf and as an agent and employee of Uber. She was under the direction and control of Uber and was providing transportation within the scope of her employment and agency.

43. Uber owed plaintiffs and the general public a duty of care in the hiring, training, supervision, and management of its drivers.

44. Uber negligently hired, trained, supervised, and/or managed Chipman, as set forth above. If Uber had provided and exercised proper hiring, training, supervision and management over its drivers, including Chipman, this accident could have been avoided.

45. As a direct and proximate result of this negligence in hiring, training, supervision and management by Uber, Samantha Fagan and Sabrina Fagan suffered severe physical, mental and emotional injuries, substantial pain and suffering, loss of enjoyment of life, lost wages, permanent scarring and other damages.

46. Samantha Fagan and Sabrina Fagan hereby demand compensation therefor.

## **PRAYER FOR RELIEF**

NOW, THEREFORE, Samantha Fagan and Sabrina Fagan respectfully demand that this Honorable Court:

(1) Award damages to them and against the defendants, jointly and severally, in amounts sufficient to compensate them for their physical injuries, emotional injuries, pain and suffering, lost wages, loss of enjoyment of life, permanent scarring, and all other harms as may be adduced at trial;

(2) Award to them their costs, expenses, fees, attorney's fees and interest; and

(3) Award such additional relief that may be just and proper.

## JURY TRIAL DEMAND

Samantha Fagan and Sabrina Fagan respectfully demand a trial by jury on all issues so triable.

                    Respectfully submitted,

                    SABRINA FAGAN and
                    SAMANTHA FAGAN,

                    By their attorneys,

                    */s/ Jonathan D. Plaut*
                    Jonathan D. Plaut
                    BBO#: 638344
                    COHAN RASNICK PLAUT LLP
                    One State Street, 12th floor
                    Boston, MA 02109
                    Tel: (617) 451-3200
                    jdplaut@crmllp.com

                    Fred T. Polacek
                    245 Waterman St., Suite 111
                    Providence, RI 02906
                    Tel: (401) 861-5662
                    fred@fredpolaceklaw.com

Date: April 7, 2022